The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. We want to welcome everyone to the 4th Circuit Court of Appeals this morning. We have three interesting cases, a group of very good lawyers, and so I know we have several guests from Virginia Military Institute, and we welcome you to Richmond and to the 4th Circuit. In the first case, Juanita Cavendish v. Director of the Office of Workers' Compensation Programs. It's what we call a black lung case, and it's being handled for the applicant widow by the Washington and Lee University Law School. Ms. Burgess? Yes, Your Honor. Mr. McDonald, you're going to introduce her. I'm sorry. The supervising attorney. This is the lawyer in charge of the program. May it please the Court. My name is Tim McDonald and I represent the petitioner in this case, Mrs. Juanita Cavendish. It is my pleasure to introduce to the Court Ms. Annalise Burgess, a third-year student at Washington and Lee University School of Law, working in our Advanced Administrative Litigation Clinic, and she will be presenting oral argument on behalf of Mrs. Cavendish today. Yes, sir. We appreciate your service and we look forward to the service of the students and we look forward to the argument. Thank you, sir. Ms. Burgess? I'm impressed by all the documents you've brought up. We're hoping you don't have to use them all. I was told, or I thought you might make a joke about it. May it please the Court. My name is Annalise Burgess and I'm here representing Mrs. Juanita Cavendish, the appellant in this matter. Mrs. Cavendish is before this Court asking that the decision and order of Administrative Law Judge Patricia Dahm be reversed and remanded with instructions to re-examine the evidence in this case as to total disability. Judge Dahm's decision and order was irrational, not based on substantial evidence, and it is, in fact, contradicted by the evidence of record. In a black lung claim, a claimant must establish that they are totally disabled from pneumoconiosis, or black lung disease. Total disability is described in the regulation in the following way. If a minor has a pulmonary or respiratory impairment which standing alone prevents or prevented the minor from performing his or her last coal mine work, thus central to the determination of total disability is what were the physical demands of the minor's last usual coal mine job. So what's our standard of review here? And all of her determinations in this case were supported by substantial evidence, and if they are rational. Substantial evidence means more than a mere scintilla of evidence, and in this case, what Judge Dahm did was she took a single form and discredited all other evidence of record that Mr. Cavendish completed light to moderate work with occasional heavy taxation. Which form are you talking about? We're talking about the CM-913, Your Honor. The 913? Yes, it's a lot of numbers, but the CM-913 is on page JA-159. That's the claimant's application for benefits. It's one of their initial filings. What about the 911? Yes, Your Honor, so the CM-911 is a different form. That's an employment history form. That's a claim for benefits, too. Yes, so there's a few documents that are submitted at the initial filing or during that initial phase. Were they submitted together, the 911 and the 913? No, but they come almost directly after each other, to my understanding. In connection with the same claim? Yes, Your Honor. In connection with the same claim. How long did the decedent, Mr. Cavendish, he's deceased now, right? Yes, Your Honor. How long did he work in the coal mines? He worked in the coal mine from... The coal mines? Yes, Your Honor. He worked for lots of coal companies. Yes, so he worked in the coal mines from 1964 to 1997. 33 years. Yes, Your Honor. Okay, and he worked... How many of those years were underground mines? Your Honor, I don't have that number directly memorized, but I am happy to go through and calculate that for you. Well, looking on the 911... Yes, Your Honor. He went to work for Birch Coal Company in 1964, and he worked underground after that for 8 other coal companies up through 87, and then you turn the page and he worked at the coal temple for 5 months. That would be outside. Yes, Your Honor. All right, that's not underground. Then he went back to work underground in 1989. Excuse me, Your Honor. I forgot this had been previously calculated, but it's 16. That's what they do. These fellows worked underground in lots of patterns, and that's harder work than working on the surface sometimes. Yes, Your Honor, sometimes. That's right, and the air is better. Yes. So he worked, it appears, from that form at least 23 years underground. So what we have... Underground, before he worked anywhere on the surface. Yes, Your Honor. So what we've presented actually to the Benefits Review Board and to the lower court is that he worked for 16 years in underground coal mines. But he worked for 23 years according to this form. Your Honor, the way the form is actually calculated, it's based on a, essentially, there's a calculation under the Act, and the calculation under the Act is did you work for X amount of time during each year, and based on our calculation, it's 27 total, and 16 of those were underground mines, and I don't know... But how do you account for the fact that underground mining is more than 16 years on this form? Your Honor, I don't know how we account for that. Maybe there were periods of unemployment. Definitely possible, Your Honor. Maybe they had coal strikes, maybe it wasn't that, maybe they didn't go to work. I don't know, but I'm just looking at the form, and it just goes underground, underground, underground, underground. And I'm always, in these cases, are interested in whether they worked underground or whether they worked on the surface, because the undergrounds were the more coal dust. The breathing is rougher. Your Honor... That is true, Your Honor. ... worked before several years, according to this form, before the Black Lung Act was adopted, and before they implemented the coal safety rules, the more stricter coal safety rules, which resulted from a terrible, terrible coal mine explosion in West Virginia in 1968, and this guy had already been working underground for four years when that happened. Yes, Your Honor. What's at issue today, however, is this issue of what were the physical demands of his job, and it has to be what was the physical demands of the last usual coal mine work. So that means the last two years of his job. And that's where he was a dozer operator. Yes, Your Honor. Above ground. Yes, Your Honor, so that's what's at issue today, is whether or not that job was light work. Don't they have to understand how long he worked underground and how many years he had been a coal miner? Yes, Your Honor. Is that relevant to something? Yes, Your Honor, but not to an element that has been decided today. What's been decided by Judge Dahm is solely the single element of total disability. And for that reason, we didn't even get the chance to argue the things you're talking about right now. And what we'd like today, Your Honor, is for this case to go back so that we can see what the ALJ would have to say about those things. Counsel, can I? Sorry, go ahead. Where is that in any of your briefing? I mean, I thought this case was solely about total disability due to a back entry. This is the first time I recall seeing anything, either at the ALJ, the BRB, or here, about some prior cause of disability. Excuse me, Your Honor. I think the prior, there's a few disabilities that Mr. Cavendish has. Mr. Cavendish, yes, he hurt his back, but that only resulted in a 26% permanent partial disability. Right, but what I'm, all that may be correct. What I'm asking you is where have you brought that up in this case? That Mr. Cavendish is totally disabled from black lung disease. The total disability, as you just described it, was his injury while he was a dozer operator. That's what was, that's in the ALJ opinion, that's in the BRB opinion, that's what you've briefed here. I'm not recalling anything about prior work as a cause of disability. Your Honor, what we're looking. So what I'm asking you is where is it? Yes, Your Honor. So we've presented evidence that Mr. Cavendish had a pulmonary or respiratory impairment, which is the only thing that's required under total disability, is that you have a pulmonary or respiratory impairment. So we presented evidence that Mr. Cavendish has a pulmonary or respiratory impairment, not black lung disease. We have presented evidence that he has black lung disease in particular, but for this single element that was decided that we're talking about today. We're just talking about a pulmonary or respiratory impairment, and if he has one, then we have to look to what the physical demands of his job were. And so with the physical demands. Which is, is there evidence, pro or con, that he can operate the bulldozer? Yes, Your Honor. It's what does a bulldozer operator do and what are the physical demands of that job. Yes, Your Honor. And what is your answer to that question? I know you think the ALJ was wrong in saying light, but what is your view of what the correct answer is on this record? Light to moderate work with occasional heavy work exertion. We presented evidence, we presented Dr. Seuss' expert opinion, Dr. Allen's expert opinion. We presented two state claims, which in their finding of fact say that Mr. Cavendish had to lift a dozer battery and that he hurt his back lifting that dozer battery. So, Counsel, if the ALJ, say, were to accept the wife's testimony that there was occasional lifting of batteries, would that get you, is that sufficient evidence in your view to show that the right exertional level is light to medium and occasional heavy? Yes, Your Honor, but we don't believe that's the only evidence. No, I know. I'm just trying to figure out how often he'd have to be lifting this battery. If it's just like twice over the course of several years, is that enough in your view to get you to occasionally heavy? If Mr. Cavendish had to lift a dozer battery at work ever, ever, then he is totally once, twice, yearly, monthly. But once would be sufficient in your view? Yes, Your Honor. If Mr. Cavendish ever had to lift a dozer battery at work, he would be totally disabled under the regulation because the regulation states that the physical demands are central to determining total disability. We can imagine it like a hurdle. When the hurdle, for instance, if a person has severe COPD and they're a coal miner, when they go to prove total disability, they can probably still do a sedentary job, right? And so the hurdle is going to be really high for them to decide, for them to be able to prove total disability. But if that same person with severe COPD is going to show that he has a light to moderate job with heavy work exertion, that hurdle is going to be lower because that job is hard and a person with severe COPD could not do that job. So it's easier for them to prove. So what's your best evidence of that? Yes, Your Honor. So there's a few pieces of evidence. We have the state claims. The state claims show, JA181 and JA184, show that Mr. Cavendish hurt his back so bad lifting a dozer battery or helping to lift a dozer battery. State claims differ in their findings of fact on that. That he hurt his back so bad that he received a permanent partial disability for that lift of a dozer battery. We also have Mrs. Cavendish's testimony. Mrs. Cavendish testified on JA775. She testified that she, that her husband on occasions, is the quote, on occasions had to lift dozer batteries at work. Which the ALJ said was hearsay, which could be acceptable, but it's not required. What is required, yes, Your Honor, you're correct. What is required is that she look at the evidence and that she review it. And you can't just dismiss evidence because it's hearsay. And that's what the ALJ does. She looks at that evidence, Mrs. Cavendish's testimony, and says it's hearsay and therefore non-credible. And then what she does additionally is she says None of these witnesses testified live. No, Your Honor. All of these witnesses. These things are decided on the record. Yes, Your Honor, they are all depositions. They weren't any witnesses brought into a hearing room or a courtroom and testified. Yes, Your Honor, that's correct. Both sides stipulated the judge tried on the records, like a bench trial solely on the paperwork. Yes, Your Honor, that's correct. So everything was hearsay. It's all written out. It was all written out, Your Honor. I'm not sure because of the rules, I'm not exactly sure if it would be hearsay. It wasn't a live testimony. There wasn't a single witness presented to the IJ or the ALJ, whatever you call them. That's correct. In the ALJ hearing, though, hearsay is admissible, and so it's pretty common. Hearsay can be admissible, and it can be admissible in a trial of a murder case. It depends on the exception. Yes, Your Honor. Here it was a cold record. No witnesses came to court. This is correct. One of the things I just want to talk a little bit about what Judge Agee had talked about, the CM-913, what Judge Dahm does is she finds evidence on the CM-913 that's just not there. She says there are assertions on that form that are not there. She discredits Dr. Allen's opinion. Dr. Allen is the DOL examiner, the Department of Labor examiner. Why do you say that about the form? I'm looking at it on JA-159, so this is the original claimant's declaration, and he says, you know, what do you do? Surface strip mining. My dozer operator had to climb up into the dozer about eight feet, and I sit for eight hours a day. I mean, that's the evidence, in effect, from the claimant. Let me read a quote for you. I think it would be helpful. This is Judge Dahm's opinion on JA-043. In effect, as detailed in the claimant's CM-913 form, the claimant did not walk around the worksite for anywhere near eight to ten hours a day. If you're on that page, you'll see Mr. Cavendish was never asked how much he walked. Additionally, he was never asked, the second question here is, nor did he constantly climb in and out of the dozer. That's Judge Dahm's quote on JA-043. He did not constantly climb in and out of the dozer. Nowhere on this form does it say how often Mr. Cavendish had to climb in and out of the dozer, Your Honor. So what difference does that make? It makes a difference because if you look at what she's saying, she's saying it's detailed in the CM-913. And she also says this when she discredits Mrs. Cavendish. She says the quote is— Well, the reason I ask that, I've climbed in and out of more than one bulldozer, it's not that hard. Your Honor, Dr. Seward testified as to what a coal mine bulldozer operator does. In a coal mine, he said that— This is a surface mine. Yes, Your Honor. It wasn't in a coal mine, it was a surface mine. Yes, Your Honor, it's a surface mine. One of these big—it was a big, big dozer. Yes, it took eight feet to climb up into. And Dr. Seward testified to what the other duties of what a bulldozer in a coal mine operator position does. I see my time's about to expire, but I just ask— That form also on the next page lists his other coal mine employment. Yes, Your Honor, it does. Starting in 1964 as a general inside laborer. And all those are underground mines, operations, job titles listed. I believe starting in 64 and going up to 1990. He worked underground for all this time. And there's some kind of a statutory 15-year presumption on having this black lung. If you work underground for 15 years, you're presumed to have it, right? Your Honor, there are presumptions in this case. What we're talking about here, though, is total disability. And so we don't—we haven't gotten into that subject matter on this appeal. And we haven't argued that in our brief. I'm sorry. Thank you very much. Thank you. We appreciate it. Let's see. If I could find my paperwork, I'd— Mr. Green. Good morning, Your Honor. Good to have you with us, Mr. Green. Thank you, Your Honor. May it please the Court, Christopher Green, appearing on behalf of the Respondent Landmark Corporation as insured by the West Virginia Co-workers' Pneumoconiosis Fund. Your Honor, ALJ Dom considered and weighed all the evidence. Can we start with the form, counsel? Because it did seem like the ALJ put a huge amount of weight on this form. And I'm not really seeing how you can read this form as the claimant saying he did not occasionally lift heavy things. Because all it asks for is whether you lift things daily. So I don't understand how you can read into this an assertion that not only do I not lift things daily, but I also don't lift things occasionally. Certainly, Your Honor. There's a couple points I'd like to make about the form. First, it does ask for information about other than daily work. Without limitation— Are you at 159 or something like that? Yes, Your Honor. And then if you go to page 160, the next page, without limitation, it asks if the miner's most recent job involves the use of tools, machines, or equipment. But that's not the same as asking if you lift things. In order to lift things to work on a battery, you would need to lift tools to do so, Your Honor. In order to work on a machinery, you would need to be lifting those items. There was talk about all this maintenance that was done. In order to do that, you would need to use tools to do the maintenance and to get the battery out, Your Honor. And so the concern is because he did say, yes, I do tools, machines, and equipment, but he didn't write in, and I occasionally lift batteries between 75 and 100 pounds. You think this question called for that answer? It would also, Your Honor. And additionally, he marked yes, but didn't identify anything other than a bulldozer operator. And finally, the form also has a catch-all at the end where it asked the individual to provide any other information they feel would be helpful. There's also been this inference that, well, Mr. Cavendish had a limited education, and it would be unreasonable to ask him to go beyond the form. He went to sixth grade and then went to work in a coal mine or something like that, or maybe that time was not covered. He had a sixth grade education. Exactly right, Your Honor. And he went to work in a coal mine, according to this, when he was 24 years old. Yes, sir. Do you know what he did between the time he dropped out of school? He was a veteran, Your Honor. I believe he did some military service. He was in the military, sir. Yes, sir. With regard to the inference or their statement that it would be, quote, unquote, completely unrealistic for him to go beyond the bounds of what's contained on the form, well, first off, he did exactly that. We were talking about climbing. The form does not ask about climbing. He filled in climbing himself. So he already knew that he could go beyond the bounds of the form and wasn't limited by the questions that were stated there. Second, I think it's important to note, Your Honor pointed out, the application goes along with an employment history, and they call it the CM-913. I'll call it what it is. It's a description of coal mine work. All three of those were submitted at the same time. It appears that the envelope submitting them is from March 6, 2018, and the corresponding envelope comes from the Rennell Medical Center Black Lung Clinic. The purpose of a Black Lung Clinic is to help people who want to file a claim for benefits get help filing the appropriate forms. Now, I'm not saying this is dispositive proof that that's where it came from, but it at least calls into question the inference that Mr. Cavendish was going at this on his own education and completing this form. In this posture, can we go beyond, like the ALJ didn't say anything about that. Can we look at that if that wasn't the basis for the ALJ's decision in this posture? No, Your Honor. I would strenuously maintain that we should defer to the ALJ in her factual findings, but I raise this simply to point out that the claimant here wants to assert additional facts and wants to make additional factual arguments, and I would imply that if this court adopts that, this court runs the risk of itself making a mistaken determination of fact. The ALJ considered all the evidence. The ALJ weighed all the evidence. The claimant doesn't get a different inference simply because they would like it to be so. Sorry, I just had another question. There were a couple of things I was having trouble following in the ALJ's decision. One was the weight on this form, and then the other was this thing about the foot controls, because the ALJ, like he didn't write in here anywhere, also I use foot controls, but the ALJ was, it seemed to me kind of treated the exclusivity of what's written on the form differently. The fact that he didn't write in I lift heavy things was dispositive, but the fact that he didn't write in I use the foot pedals was not. And also, what about the hand controls? Why did the ALJ think he uses foot pedals but not hand controls? I was just very confused about the whole foot control thing. Yes, Your Honor. In our opinion, it appears that ALJ essentially gave the claimant the benefit of the doubt to a large extent and was willing to assume some rigors even if they weren't clearly established there. But why not assume the one that his wife testified to if you're going to do that? If I could address the foot controls first, and then I'll turn to the testimony if Your Honor will allow me. Concerning the foot controls, I will note that while there's this argument that it should be medium, under the Dictionary of Occupational Titles that the claimant wants to be applied even though the judge is not required to, the description of light work, and this was not, unfortunately, cited in the block quote from the claimant's initial brief, does include foot controls. And it states, a job should be rated as light work when it requires sitting most of the time but entails pushing and or pulling of arm or leg controls. So even if that's accurate, it's still light manual labor. The second issue with regard to her testimony. Oh, no, I'm sorry. What about the hand controls? Like, I assume if he used foot pedals, he also used hand controls, and all the charts seem to treat those as different things. Under the light work, it's both of them, Your Honor. I apologize if I misread that. No, no, but so why didn't the ALJ say, how did you come up with foot controls but not hand controls? That is my question. Likely, like I said, Your Honor, she was giving the claimant the benefit of the doubt to assert additional rigors. It's our position that he did not establish that. With regard to Mrs. Cavendish's testimony, I think it's important to note that that is the only evidence of the weight of the battery in the record here. And it's indirect evidence. As Your Honor pointed out, the ALJ is not required to credit that. And it's also important to note, one, Mrs. Cavendish indicated she never went and visited Mr. Cavendish in the coal mine. And, two, she obtained this idea of the 80 to 100-pound battery from a statement Mr. Cavendish made to his physician, which she then saw in the physician's note and then recounted in a deposition years later. So this means that the statement went from the miner to an unnamed physician whose report is not of record, likely to a medical transcriptionist, was then supposedly seen by the claimant at an unknown time, and then recounted again years if not decades later. The ALJ is not required to give this dispositive weight. She would not be required to give this dispositive weight even if it came from the miner himself. Your Honor, continuing with the exertional rigors, I would like to touch on a couple of comments about Dr. Sood and Dr. Allen. First, as Your Honor's noted, ALJ-DOM did give diminished weight to Dr. Sood's opinion. And that's because it was inconsistent and based on generalities. Dr. Sood agreed in deposition testimony that for some bulldozer operators he's spoken to, their job is no more strenuous than simply sitting on a cushion seat. Now, in his deposition testimony at page 697, he says that for most, this is not true. But this means that for some, it is true. And while this is inconsistent with his later testimony that the medical literature establishes that even jobs that sound sedentary may have additional rigors, the ALJ doesn't err by according less weight to his later hypothesis. But that's not what the ALJ says. This is inconsistent with his assertion in the form that he never lifted things occasionally. And I guess I have the same question I already asked, a genuine question. Can we go beyond, like in this posture where we're reviewing for substantial evidence, are we limited to what the ALJ relied on? Or can we say, well, what the ALJ said was not supported by substantial evidence, but we've come up with another way to justify this outcome? The ALJ did indicate that his opinion was based on a hypothesis. So this is completely consistent with that. Essentially, the statement is that Mr. Cavendish is not a statistic. Even if most coal miners might do this work, it doesn't necessarily mean that he did. But the ALJ relied very heavily on what the expert is saying. The reason I know this coal miner didn't do that is because of what is not written down on the form. That was one part of it, Your Honor, and she also said that the claimant didn't put forth any credible evidence to establish additional rigors. Dr. Stude, she didn't credit because it was his hypothesis. Dr. Allen, she didn't credit because Dr. Allen misconstrued the exertional rigors of the claimant. She didn't credit Mrs. Cavendish's speculation about the weight for the reasons I stated. And there was the mention of the estate claim benefits. An ALJ is not required to defer to an estate claim finding. Plus, at most, all that establishes is that at one time he helped lift a battery. It doesn't establish the weight of the battery, and it doesn't establish how many people were helping him. Can I ask why it matters whether he was helping or not? I mean, it was heavy enough to put out his back, so it seems like the more people who were helping, probably the heavier the battery was. I guess I'm not understanding why that's a good fact for you, that even though he wasn't doing all of the work, it was still enough for him to injure his back. Yes, Your Honor, and that was addressed by the claimant in their petition to the board. They had argued that the battery must be heavy because he hurt his back. What we noted there is they're presumably much younger than Mr. Cavendish. As anyone of some age, and I can certainly attest to this, even sleeping wrong, you can hurt your back. I'm sorry, but why does it matter how many people were trying to lift the battery at the time this happened? That's the part I'm not getting. Because the weight of the battery would then be divided among the people. So even if you assume it's a 50-pound battery, if there are five people helping lift, that's only 10 pounds. I see, and so if you assume that every time he lifts batteries, he's doing it with this same number of people. Well, all that's established is that maybe one time he helped lift batteries. And I'm in total agreement with you, Your Honor. The record here is not clear on what's established, so that's why we should defer to the ALJ's finding. Your Honor, I'd like to touch base as well on some of the reasons. The only one of these doctors that had seen this fellow was Allen, right? Correct, Your Honor. And in the claimant's brief, they infer that Dr. Allen should thus be given some special weight because of that. But I'd note that while Dr. Allen did perform the Department of Labor-sponsored examination, there's no specific evidence that she talked with him about the exertional rigors of his coal mine work. Now, often that history is taken by a technician. The record does not establish whether Dr. Allen had any additional conversation about Mr. Cavendish's coal mine work with him. And indeed, what she wrote down concerning his coal mine work is consistent with the miner's description of coal mine employment. Dr. Allen just considered it differently than the ALJ did in terms of what Mr. Cavendish did. Because there was this talk about Dr. Allen seemed to imply that he was walking around for 8 to 10 hours. I know that some issue was taken with that. But it's important to note. But Dr. Allen had seen him and talked to him and met with him. Correct, Your Honor. And the ALJ had not. Correct, Your Honor. But the ALJ is not required to give Dr. Allen dispositive weight. She has to consider all the relevant evidence. And I agree that if you pick a piece of evidence and look at it in isolation, there are inferences that can be drawn from it. But that's not what the ALJ is supposed to do. I'm sorry. Thank you. I'm going to try one more time to ask this question because I'm genuinely not sure about the answer. So the ALJ says, based on the claimant's assertions on the CM913 form, I find that the claimant's last coal mine job as a dozer operator did not involve significant lifting or carrying. I want you to imagine, hypothetically, I don't think that the form supports that statement. Can I go and look at other things that might in the record? Can I, on my own, go do that? Or am I kind of stuck with the ALJ's reasoning? Your Honor, we should defer to the ALJ's reasoning. Okay, so if I think that sentence is wrong, I should send this back? If I think this form is not substantial evidence that he did not do any significant lifting or carrying, what should I do? Your Honor, the evidence has to be considered in total. We can't just pick one piece of evidence. Sorry, that's what I'm asking. So even if I think that statement, I don't think this form can carry that weight, so to speak. I am free to go through the record and see if there is some other substantial evidence that would support the bottom line here. If I'm understanding what Your Honor is saying, I think it is important to look at the evidence in total with regard to the ALJ's finding. So this Court's duty is not to pick one piece of evidence and say an inference could be drawn for the claimant, so therefore we'll send it back. I think it's also important to note that this burden of establishing the rigors of coal mine employment rests with the claimant. So even if there's no evidence whatsoever that's credible, the claimant still fails to carry that burden. And I did want to touch base briefly on some of the reasons the ALJ accorded Dr. Sude's opinion less weight. If we get into the merits of it and their medical determinations, I'd note that I personally took Dr. Sude's deposition. And he has a number of credibility issues. He went back on some of his statements, and the ALJ took that to heart when she was analyzing his opinion. So this is going beyond just looking at one test and assessing that test. The ALJ took that and looked at his opinion in total, just like I'm urging this Court to do. Well, but it says, again, that he persisted in opining total disability based on his hypothesis regarding higher rigor levels than attested to in this form. And based on that, I find that his opinion is entitled to little weight. It just seems like it all comes back to the form over and over again. That was one aspect of the ALJ's decision to discredit Dr. Sude. There's a completely separate aspect of it as well. She noted that Dr. Sude, in that laundry list, changed his opinion with regard to whether the testing was qualifying under the DOL standards, changed his opinion concerning how the American Thoracic Society standards would apply, and the ALJ cited that in her decision. Sorry, what page are we at? In the ALJ's decision, that would be in the Joint Appendix, the deposition itself is... Oh, no, I'm sorry, in the ALJ's opinion. Sorry, that would be page 43 where she's talking about the medical determinations. Or page 43 of the Joint Appendix, excuse me. And that cites to pages 723 and 733 of Dr. Sude's deposition testimony. And the same is true for Dr. Allen. The ALJ didn't just look at Dr. Allen and say, well, these tests don't qualify, so I'm going to accord Dr. Allen little weight. The ALJ looked at it in total and said, there are other reasons to discredit Dr. Allen. Where was Dr. Allen practicing medicine? Where was he from? Your Honor, candidly, I don't recall from the record. Was he like in that county? That's in Nicholas County. Your Honor, I believe Dr. Allen is female and I'm not sure where she practices. I apologize. She is. Your Honor, in closing, I maintain we have to look back and note that the administrative law judge is the fact finder here. We have to defer to her findings. And she considered each of the ways in which the claimant can establish a totally disabling pulmonary or respiratory impairment. She noted the pulmonary function testing does not qualify under DOL standards for disability. She noted the arterial blood gas testing does not qualify under the Department of Labor standards for disability. She noted there's no reasoned opinions of core pulmonary, Dr. Sude's suppositions to the side. And noted that the medical opinions did not establish total disability. All we're talking about here is a subpart of a subpart. And even with that, she noted there were other reasons to accord those opinions of Dr. Sude and Allen diminished weight. Is it the government's position that the 30 years or so of underground mining is irrelevant? Your Honor, years of coal mine employment is always something to consider. In this case, Your Honor had mentioned the 15-year presumption. Even if the requisite years of coal mine employment are established. I'm talking about the underground mining. That's where it's dusty. Or dustier. But you're not taking the position. The government's not taking the position. That's irrelevant. First, just to clarify, Your Honor, I'm here on behalf of Landmark Corporation, as insured by the West Virginia Co-workers Pneumoconiosis Fund. Well, the director is a party here. You're trying to uphold them, yeah. Yes, Your Honor. And with regard to the underground coal mine employment, the ALJ did not reach a determination concerning the years because it wasn't required. A requisite element of entitlement under the regulations. But on these forms, that's what it shows. Yes, Your Honor. Mr. Cavendish did have coal mine work. And it did appear that some of his coal mine employment was underground. Well, underground, I mean, from 1964 on the first page to 1987, everything he did was underground. Yes, Your Honor. 23 years, and then you go to another page. And to get to that presumption, you need to prove both the underground coal mine employment and a totally disabling pulmonary or respiratory impairment. That's also this element of entitlement that she did not establish. Your Honor, I see my hand is up. If there are no further questions from the panel, I'll take my seat. We appreciate it. Thank you. Thank you very much. Ms. Burgess? Yes, Your Honor. I'd like to start out by mentioning that on JA-013, ALJ Dom says that the CM-913 is not fully reflective of Mr. Cavendish's job duties. And then what she does is she looks to outside information, the Dictionary of Occupational Titles, which she took official notice of. She looks to that definition to find items, different duties that he did at that job, including, we believe, foot controls, is where she got that. Dr. Sude's expert opinion also mentions foot controls and hand levers. In this case, we believe we've carried our burden of showing that Mr. Cavendish was totally disabled. We presented evidence of Dr. Allen saying that it was light to moderate work and he was still totally disabled, Dr. Sude saying that Mr. Cavendish was totally disabled and he did light to moderate work with occasional heavy work exertion. We presented two state claims that state that Mr. Cavendish had to lift a dozer battery and he hurt his back lifting that dozer battery. And we've also presented Mrs. Cavendish's testimony, which is supported by the state claim. It's also supported by Dr. Sude's expert opinion on what a bulldozer operator actually does. Your Honors, what I'd also like to mention is that when you look at the CM913, Judge Dahm is finding assertions where there are blanks, where it does not ask what one does on a date. It only asks what one does on a daily basis. It does not ask what that person does occasionally. And she's finding assertions where there are blanks. And we just ask that you return this to the ALJ so that we can get an opinion that is supported by substantial evidence, Your Honor. Thank you. Thank you very much, Ms. Burgess. And thanks to your group at Worcester and Lee. We'll come down and re-counsel and then go on to the next case.
judges: Robert B. King, G. Steven Agee, Pamela A. Harris